UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL TERPENING #859537,

                Petitioner,

v.

SARAH SCHROEDER,[1]

                Respondent.

_____/

Case No. 1:15-cv-265

Hon. Janet T. Neff

**REPORT AND RECOMMENDATION**

This is a state prisoner's habeas corpus action brought under 28 U.S.C. § 2254. Petitioner

Michael Terpening is incarcerated with the Michigan Department of Corrections (MDOC) at the

Marquette Branch Prison in Marquette, Michigan. Following a jury trial in the Barry County

Circuit Court, Petitioner was convicted of one count of second-degree criminal sexual conduct

(CSC), pursuant to Mich. Comp. Laws § 750.520c(1)(b); one count of third-degree CSC, pursuant

to Mich. Comp. Laws § 750.520d(1)(b); three counts of fourth-degree CSC, pursuant to Mich.

Comp. Laws § 750.520e(1)(b); one count of attempted CSC fourth-degree, pursuant to Mich.

Comp. Laws § 750.520e(1)(a); and two counts of aggravated indecent exposure, Mich. Comp.

Laws § 750.335a(2)(b). On December 13, 2012, the court sentenced Petitioner to concurrent

sentences of 10 to 15 years for second-degree CSC and 10 to 15 years for third-degree CSC. He

was sentenced to 66 days for each of the other convictions, with 66 days credit for each.

---

[1] Because Petitioner has been transferred to the Marquette Branch Prison, Sarah Schroeder, the Warden at that facility, is substituted as the Respondent pursuant to Federal Rule of Civil Procedure 25(d) and the caption amended as set forth above.

On March 13, 2015, Petitioner timely filed his habeas corpus petition. On August 26, 2016, the case was stayed to allow Petitioner to return to the state court to present his unexhausted claims to the trial court. (ECF No. 18.) On August 6, 2021, I granted Petitioner's motion to reopen the case. (ECF No. 33.) Petitioner filed his amended petition on February 14, 2022.[2]

Petitioner's amended petition raises the following grounds for relief:

I. Petitioner was denied his right to the effective assistance of counsel where his criminal lawyer incorrectly told the Defendant that he could not plead nolo contendere.

II. Reading in Clayton Waidelich's preliminary examination testimony violated the Defendant's Sixth Amendment right to confrontation.

III. The trial court abused its discretion and violated Mr. Terpening's right to confrontation and to present a defense when it excluded evidence of Brian Hardy's prior false accusations of sexual misconduct; appellate counsel was ineffective.

IV. Three pieces of exculpatory evidence were wrongfully withheld from the Petitioner during his trial in violation of their *Brady* obligations. This withholding of evidence severely prejudiced the Petitioner. Appellate counsel provided ineffective assistance of counsel for failing to raise this

---

[2] The August 26, 2016 Order staying this action directed Petitioner to file a motion to amend his petition, including a description of his newly-exhausted claims and the substance of the decision at each step of the state-court review. (ECF No. 18 at PageID.2186.) Petitioner filed a pro se motion to reopen the case on July 30, 2021. (ECF No. 31.) The motion was granted on August 6, 2021, and Petitioner was instructed to file an amended petition within 28 days. (ECF No. 33.) The deadline for filing the amended petition was subsequently extended three times, once at Petitioner's request while proceeding pro se and two times at Petitioner's request through counsel. (ECF Nos. 35, 37, and 39.) Instead of filing an amended petition, counsel filed a brief setting forth Petitioner's habeas issues, which I construe as an amended petition setting forth Petitioner's habeas issues. Respondent reasonably construed the brief as Petitioner's amended petition asserting only the claims set forth therein, as its response addressed only the issues raised in the brief. (ECF No. 42.) In fact, both motions for extension filed by counsel indicated an intent to abandon those issues (ECF Nos. 36 and 38), and counsel has confirmed in the brief that those issues have been abandoned. (ECF No. 40 at PageID.2359 ("It is highly unusual at this stage of the proceedings that habeas counsel has not adopted one of the appellate counsel's issues, even though many of them were in fact nominally federalized. This is because they had almost no potential of prevailing before this Court. . . . These were mediocre issues that simply did not have a good chance of winning.").)

issue on appeal. This Court should authorize limited discovery concerning this withholding and disclosure and then grant the writ.

V.    Appellate counsel Ambrose has provided ineffective assistance of counsel for failing to obtain the plea agreement hearing transcript held on October 16, 2012 and not raising the issue: Defendant was denied his right to effective assistance of counsel where he was not given competent advice.

VI.    At minimum, Petitioner should be granted a certificate of appealability.

(ECF No. 40 at PageID.2241–45.)

Respondent has filed an answer to the petition (ECF No. 42) stating that the petition should be denied because the grounds are procedurally defaulted, unexhausted, and lack merit. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I recommend that the petition be denied.

## I.  Factual background

The Michigan Court of Appeals set forth the essential facts of the case as follows:

Defendant ran two facilities on his farm in Barry County—an animal rescue called Earth Services, which involved young adult workers on probation who were completing community service as part of the KREP program, and a residential group home for teenage foster children called the House Next Door. Defendant was charged with 13 offenses against three minors and two young adults that he met through his work with these two facilities. BH (17 years old), BD (17 years old), and RR (14 years old) were minor foster children placed with defendant at the House Next Door facility, and CW (21 years old) and TK (19 or 20 years old) were young adult probationers in the KREP program performing community service at Earth Services. Defendant was charged with the following offenses: (1) regarding BH—CSC III (force or coercion), two counts CSC IV (force or coercion), two counts aggravated indecent exposure, and attempted CSC III (force or coercion); (2) regarding BD—CSC II (age 13 to 15 and coercion/authority) or alternatively CSC II (employee of juvenile detention facility); (3) regarding RR—CSC III (force or coercion), CSC IV (force or coercion), and aggravated indecent exposure; (4) regarding CW—CSC IV (force or coercion); (5) regarding TK—attempted CSC IV (force or coercion). In a trial by jury, defendant was found guilty of all but the attempted CSC III charge involving minor BH; guilty of the single charges involving minor BD, young adult TK, and young adult CW; and not guilty of the three charges involving minor RR.

(Mich. Ct. App. Mar. 13, 2014 Op., ECF No. 7-22 at PageID.1564–65.) The trial court sentenced Petitioner as set forth above.

Petitioner appealed his convictions and sentences to the Michigan Court of Appeals. On March 13, 2014, the Michigan Court of Appeals affirmed Petitioner's convictions and sentences. Petitioner then applied for leave to appeal to the Michigan Supreme Court. On October 28, 2014, that court denied leave. Petitioner did not file a petition for a writ of certiorari with the United States Supreme Court.

Petitioner filed a petition for writ of habeas corpus in this Court on March 13, 2015. On September 28, 2015, Respondent filed the state-court record, pursuant to Rule 5, RULES GOVERNING § 2254 CASES. (ECF No. 7.) The same day, Respondent filed a motion to dismiss on the grounds that some of Petitioner's issues were unexhausted. (ECF No. 6.) In response, Petitioner filed a motion for stay and abeyance. *See Rhines v. Weber*, 544 U.S. 269, 277–78 (2005). (ECF No. 11.) On August 26, 2016, Magistrate Judge Green granted Petitioner's motion, dismissed Respondent's motion without prejudice, and granted Petitioner 30 days to file a motion for relief from judgment in the Barry County Circuit Court. (ECF No. 18.)

Petitioner then returned to the trial court and filed his pro se motion for relief from judgment. (ECF No. 43-2 at PageID.4270–76.) Petitioner subsequently obtained counsel, who filed an amended motion for relief from judgment. (ECF No. 43-1 at PageID.4075–80.) An acting circuit court judge denied the motion on October 23, 2019. (ECF No. 41-6 at PageID.3639.) Petitioner, through counsel, appealed the order to the Michigan Court of Appeals, which vacated the trial court's order and remanded the matter for reconsideration due to the trial court's failure to include a concise statement of the reasons for denial. (ECF No. 41-26 at PageID.3579.) On June 5, 2020, following remand, the trial court entered an order denying the motion for failure to meet

the requirements of Michigan Court Rule 6.508(D)(3). (ECF No. 43-3.) Petitioner filed a petition for leave to appeal the order to the Michigan Court of Appeals, which denied leave on November 25, 2020. (ECF No. 41-27 at PageID.3644.) Petitioner filed an application for leave to appeal to the Michigan Supreme Court. That court denied the application under Michigan Court Rule 6.508(D) on April 27, 2001. (ECF No. 41-28 at PageID.3756.) Petitioner then filed a motion for reconsideration, which was denied on July 6, 2021. (*Id.* at PageID.3747.)

## II.  AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of

the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

6

### III.  Analysis

**A.      Advice Regarding Consequences of Nolo Contendere Plea**

In his first claim, Petitioner asserts that his Sixth Amendment right to effective assistance of counsel was violated when one of his trial attorneys incorrectly advised him that he could not plead nolo contendere in the criminal case because of the pending family court proceeding to terminate Petitioner's parental rights. Relatedly, in his fifth claim, Petitioner asserts a substantive claim of ineffective assistance of appellate counsel for failure to obtain the October 16, 2012 plea hearing transcript and to raise this claim on direct appeal. I will address both claims together.

At the trial level, Petitioner was represented by attorneys J. Thomas Schaeffer and Joseph Eldred. In October 2012, before trial commenced, the Attorney General, having assumed control of the prosecution, extended a plea offer that called for Petitioner to plead guilty to specified counts in both cases, upon which the remaining charges in both cases would be dismissed. In exchange for the plea, Petitioner would be sentenced to five years of probation, with the first year to be served in the Berrien County Jail. (ECF No. 41-14 at PageID.2782–83.) Petitioner alleges that he had seriously considered the plea offer but had concerns about how it would impact the pending family court matter concerning termination of Petitioner's parental rights. On October 16, 2012, the court held a hearing on the plea offer. Attorney Eldred attended the hearing but attorney Schaeffer was unavailable. Petitioner alleges that, prior to the hearing, he met with attorney Eldred and informed him that he was prepared to plead pursuant to the offered terms, on condition that a pending insurance fraud case and the family court proceeding would be terminated. Petitioner alleges that after conferring with the judge (with opposing counsel present), attorney Eldred informed him that the other matters could not be dismissed as part of the offer. Plaintiff asserts that when he inquired about a nolo contendere or "no contest" plea, attorney Eldred told him that such a plea was unavailable because pleading no contest while maintaining his innocence would

7

constitute fraud on the probate court. Petitioner contends that he rejected the plea offer only because of attorney Eldred's incorrect legal advice about the effect a no contest plea on the family court proceedings. (ECF No. 40 at PageID.2269–70.)

Respondent correctly argues that this claim is procedurally defaulted. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a state procedural rule that was "'firmly established and regularly followed' at the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either: (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*,

477 U.S. 478, 495 (1986). While Petitioner concedes that his claim is procedurally defaulted, he argues that his appellate counsel's ineffectiveness in failing to raise the issue on direct appeal or in a timely motion for new trial furnishes the cause to excuse his state-law default. (ECF No. 40 at PageID.2306–08.)

Regardless, the Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson*, 351 F.3d at 215–16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999). Because that is the case with the first claim, I will look beyond Petitioner's procedural default and simply address the claim, which has no merit.

The claim is governed by *Strickland v. Washington*, 466 U.S. 668 (1984), in which the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To prove ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.

*Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, considering the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Because the standards under both *Strickland* and Section 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In those circumstances, "[t]he question [before the habeas court] is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The two-part *Strickland* test also applies when a plea is at issue. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* at 58–59. In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. *Id.* at 59. The

*Strickland* standard applies not only where counsel's professionally unreasonable conduct results in acceptance of a plea offer, but also where counsel improperly advises his client, and the plea offer is rejected. *Lafler v. Cooper*, 566 U.S. 156 (2012). As in *Hill*, 474 U.S. at 58, the prejudice prong of *Strickland* turns on whether, absent counsel's errors, the result of the plea process would have been different. *See id.* at 162–68. In such circumstances, a petitioner "must demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 147–49 (2012). Moreover, under *Lafler*, a petitioner must also show that:

> "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

566 U.S. at 164.

> The trial court rejected Petitioner's claim as follows:

> Trial Counsel was not ineffective for failing to properly advise Defendant of the consequences of a no contest plea as the offer made by the Prosecution required a plea of guilty. Therefore his choice to reject the plea offer could not have been related to the effect of a no contest plea and the effects of such a no contest plea would be irrelevant to the offer. Appellant counsel was likewise not ineffective for failing to raise an irrelevant issue.

(Barry Cnty. Cir. Ct. Order, ECF No. 43-3 at PageID.4277.)

Petitioner's claim fails because, even if attorney Eldred gave Petitioner erroneous advice on the effect of a nolo contendere plea in the family-court proceeding, Petitioner cannot show prejudice. That is, there was never an offer for a nolo contendere plea for Petitioner to accept. Although Petitioner asserts in his brief that "[t]he deal that was offered was for a nolo contendere plea or no contest plea," he cites no record support for this assertion. (ECF No. 40 at PageID.2285.) Moreover, this unsupported allegation is fully refuted by the transcript of the October 16, 2012

11

plea hearing, which clearly sets forth the terms of the plea offer and shows that the plea offer required Petitioner to plead guilty. (ECF No. 41-14 at PageID.2782–84.) Thus, the plea offer that Petitioner claims he rejected based on attorney Eldred's erroneous advice never existed. The trial court's determination that attorney Eldred's advice concerning the effect of a nolo contendere plea had no bearing on Petitioner's decision to reject the actual plea offer is well supported.[3] Moreover, Petitioner does not claim that counsel was ineffective for not seeking a nolo contendere plea offer, nor has he cited any basis to conclude that the Attorney General likely would have extended such an offer if counsel had inquired.

In short, Petitioner fails to show that the trial court's rejection of his ineffective assistance claim is contrary to, or an unreasonable application of, *Strickland* and *Lafler*. For the same reasons, Petitioner's ineffective assistance of appellate counsel claim concerning appellate counsel's failure to obtain the transcript of the October 16, 2012 plea hearing and to raise the plea issue on appeal is meritless. When an underlying argument is meritless, "it could scarcely be ineffective of appellate counsel not to raise [it]." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (citing *Rashad v. Lafler*, 675 F.3d 564, 571 (6th Cir. 2012)). In other words, "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Id.*

---

[3] The affidavit of Petitioner's mother, Kimberli Tungate, that Petitioner offered in support of his motion for relief from judgment is consistent with the plea hearing transcript. (ECF No. 43-2 at PageID.4254.) Tungate initially notes that Petitioner "was concerned about the effect that '*a guilty plea*' would have on a pending family court matter for the termination of his parental rights." (*Id.* (italics added).) It was only after attorney Eldridge told Petitioner that he could not advise him about the effect a guilty  plea on the family-court proceeding and that other matters could not be dismissed as part of the plea deal that Petitioner asked Eldridge "whether he could plead 'no contest' to the charges." (*Id.*)

**B.    Admission of Preliminary Examination Testimomy**

In his second claim, Petitioner asserts that the trial court violated his Sixth Amendment right to confront witnesses against him when it allowed the prosecution to read in the preliminary examination testimony of prosecution witness Clayton Waidelich after declaring him unavailable. Petitioner also raises this claim as an independent ineffective assistance of appellate counsel in his fifth claim, which I will consider together with this claim. Respondent contends that the Confrontation Clause claim is procedurally defaulted and that, even if the procedural default is excused, the trial court's rejection of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

Although Respondent did not raise the issue, I conclude that the Court lacks jurisdiction over this claim. This claim concerns Clayton Waidelich, identified as CW, the victim in one of the CSC IV charges. In fact, CSC IV was the only charge involving Waidelich. As noted above, Petitioner was sentenced to 66 days imprisonment for this conviction, with 66 days credit. Thus, Petitioner completed his sentence on this charge on December 13, 2012—the date of the sentencing hearing. (ECF No. 7-21.) "For a federal court to have jurisdiction to grant a petition for a writ of habeas corpus under § 2254, a petitioner must be 'in custody pursuant to the judgment of a State court.'" *Steverson v. Summers*, 258 F.3d 520, 522 (6th Cir. 2001) (quoting 28 U.S.C. § 2254(a)); 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States. . . ."). The United States Supreme Court has interpreted this to mean that "the habeas petitioner [must] be 'in custody *under the conviction or sentence under attack* at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) (emphasis added) (citing *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)). "[O]nce the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody'

13

for the purposes of a habeas attack upon it." *Id.* at 492. Because Petitioner had fully served his sentence on the CSC IV conviction involving Waidelich more than two years before he filed his habeas petition in this matter, the Court lacks jurisdiction to grant habeas relief on this claim, which relates solely to that conviction.[4] *See Dennis v. Ludwick*, No. 2:10-CV-11056, 2012 WL 5379461, at *4 (E.D. Mich. Oct. 31, 2012) (declining to consider claims concerning marijuana and assault convictions as the petitioner had already served his sentences with credit for time served on those claims at the time he filed his habeas petition and the court thus lacked jurisdiction over those claims).

In sum, because Petitioner's sentence on the CSC IV charge concerning Waidelich was completely expired at the time Petitioner filed his habeas petition, and his second claim is concerned only with this conviction, this Court lacks jurisdiction to decide this claim. For the same reasons, the Court also lacks jurisdiction over Petitioner's ineffective assistance of appellate counsel claim concerning this issue.

## C.    Exclusion of Evidence of Prior False Accusations

At trial, Petitioner sought to present evidence that victim B.H. had made a previous false allegation regarding sexual conduct by B.H.'s adoptive father with his own children in order to impeach B.H.'s credibility. Following a hearing, the trial court found that exclusion was warranted because the evidence was minimally relevant and more prejudicial than probative. (ECF No. 7-8 at PageID.737.) After finding that the prior allegation did not fall under Michigan's Rape Shield Act (*id.* at PageID.736), the judge observed that allowing Petitioner to present the evidence to impeach B.H. would amount to "hav[ing] a trial on that particular issue," because although Child Protective Services (CPS) had found B.H.'s allegation "not substantiated," the finding was based

---

[4] Petitioner does not allege that the admission of this evidence impacted the jury's consideration of the other charges involving different victims.

on "the most minimal standard there is," and B.H. would deny on cross-examination that his prior allegation was false. (*Id.* at PageID.736.) Petitioner contends that the trial court's exclusion of this evidence deprived him of his rights to confrontation and to present a defense.

Respondent contends that the claim is procedurally defaulted because Petitioner failed to raise it on direct appeal, and Petitioner counters that his appellate counsel was ineffective for not raising the issue. I find that the interests of judicial economy are best served by addressing the merits of this claim. *See Lambrix*, 520 U.S. at 525 ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.").

"Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)); *see also Wilson v. Sheldon*, 874 F.3d 470, 475–76 (6th Cir. 2017).

> With regard to evidentiary rulings, the standard for habeas relief is not easily met. "[F]ederal habeas courts review state court evidentiary decisions only for consistency with due process." *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001). "A state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights." *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Moreover, such rulings "are usually not to be questioned in a federal habeas corpus proceeding." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988)).

*Wilson v. Sheldon*, 874 F.3d 470, 475 (6th Cir. 2017). Under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law, or if the state court decided the evidentiary

issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const., Am. VI; *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). The Supreme Court long has read this right as securing an adequate opportunity to cross-examine adverse witnesses. *United States v. Owens*, 484 U.S. 554, 557 (1988) (citing *Mattox v. United States*, 156 U.S. 237, 242–43 (1895), and *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)). As the Court explained many years ago:

> The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox*, 156 U.S. at 242–43; *see also California v. Green*, 399 U.S. 149, 157–58 (1970). While the Confrontation Clause guarantees an opportunity for effective cross-examination, it does not guarantee "'cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679; *see also United States v. Adams*, 722 F.3d 788, 834 (6th Cir. 2013); *King v. Trippett*, 192 F.3d 517, 524 (6th Cir. 1999). "No matter how central [a witness's] credibility is to a case[,] . . . the

Constitution does not require that a defendant be given the opportunity to wage a general attack on credibility by pointing to individual instances of past conduct." *Boggs v. Collins*, 226 F.3d 728, 740 (6th Cir. 2000).

The right to present a defense is subject to similar limitations. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations and internal quotation marks omitted). The Supreme Court explained the parameters of this right in *United States v. Scheffer*, 523 U.S. 303 (1998):

> A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987); *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973). A defendant's interest in presenting such evidence may thus "'bow to accommodate other legitimate interests in the criminal trial process.'" *Rock*, *supra*, at 55 (quoting *Chambers*, *supra*, at 295); *accord*, *Michigan v. Lucas*, 500 U.S. 145, 149 (1991). As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve." *Rock*, *supra*, at 56; *accord*, *Lucas*, *supra*, at 151. Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused. *See Rock*, *supra*, at 58; *Chambers*, *supra*, at 302; *Washington v. Texas*, 388 U.S. 14, 22-23 (1967).

*Scheffer*, 523 U.S. at 308 (footnote omitted). In determining whether a trial court's exclusion of evidence violated this right, a court should consider whether the exclusion "significantly impaired" the defense. *Id.* at 315–17.

The trial court rejected Petitioner's argument raised in his motion for relief from judgment:

> The trial court did not abuse its discretion and did not violate Defendants (sic) right of Confrontation by excluding extrinsic evidence of an alleged false allegation of CSC. The trial court concluded that given the dispute as to whether the allegation was false, it could result in confusion for the jury resulting in a "trial within a trial". The trial court did not precluded (sic) the defense from confronting the witness about his report and therefore did not violate the defendant's right to confront his

17

accuser. Appellant counsel was not ineffective for failing to raise the issue as the court's order was consistent with MRE 403 and 608.

(ECF No. 43-3 at PageID.4278.)

As set forth above, the trial court found that evidence concerning B.H.'s prior false accusation about his adoptive father was minimally relevant and more prejudicial than probative. In this regard, it is important to note that B.H.'s prior allegation did not involve sexual conduct by his adoptive father toward B.H. (as was the case with Petitioner's conduct), but rather involved the father's conduct toward another child. More importantly, the trial court appropriately found that the falsity of the alleged statement was unresolved; in spite of the CPS findings, B.H. maintained that his accusation was not false, which would require the jury to decide the additional factual issue of whether the accusation was false. Given the dispute as to falsity, the trial judge reasonably determined that admission of the evidence would result in a "trial within a trial" that would lead to juror confusion of the issues arising from presentation of a collateral issue. This decision was well within the wide latitude that trial judges are afforded "to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues." *Crane*, 476 U.S. at 689–90. Despite this ruling, Petitioner was not precluded from attacking B.H.'s credibility at trial. For example, defense counsel devoted a fair bit of cross-examination to questioning B.H. about whether he and another victim, R.R., had planned to "set Michael Terpening up" by alleging he had sexually touched them. (ECF No. 41-17 at PageID.2930–31.) Petitioner thus was not denied his rights to confront B.H. or to present a defense.

Based on these circumstances and the relevant authority, Petitioner fails to demonstrate that the trial court's decision was contrary to, or an unreasonable application of, clearly established federal law. In addition, the trial court's decision was not based on an unreasonable determination

of the facts in light of the evidence presented. Therefore, this claim provides no basis for habeas relief.

    **D.**    ***Brady* Violation**

    In his final ground, Petitioner asserts that the prosecution denied him his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding three pieces of evidence: (1) a CPS report involving Dale Voorhees (identified in the report as Dale Baughan) (ECF No. 43-2 at PageID.4255–57); (2) a June 20, 2007 unsigned Calhoun County DHS note indicating that Petitioner's foster care license was being sent back to remove a request to locate sexually abused children (*id.* at PageID.4258); and (3) a May 10, 2011 call record regarding a 911 call made by Danielle Denney from Earth Services (*id.* at PageID.4259).

    Respondent contends that the claim is unexhausted. As a general rule, a state prisoner seeking federal habeas relief must first exhaust his or her available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b) and (c); *Picard v. Connor*, 404 U.S. 270, 275–78 (1971). A petition for a writ of habeas corpus filed by a state prisoner shall not be granted unless the petitioner has exhausted his available state court remedies, there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the petitioner's rights. *See Turner v. Bagley*, 401 F.3d 718, 724 (6th Cir. 2005). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). In order to properly exhaust a claim on state post-conviction review, a habeas petitioner is required to present that claim in his post-conviction motion before the state trial court and in his post-conviction appeal to the state's appellate courts. *See Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009).

Petitioner contends that he presented this claim to the state courts by raising the issue in his Standard 4 brief to the Michigan Court of Appeals, by raising it in his motion for relief from judgment, by raising it as issue VI in his application for leave to appeal from the trial court's June 5, 2020 order denying his motion for relief from judgment, and by raising it in his application for leave to appeal to the Michigan Supreme Court. (ECF No. 40 at PageID.2341–42.) Contrary to Petitioner's argument, he failed to exhaust this claim. Petitioner is correct that he raised his *Brady* claim in his Standard 4 brief (ECF No. 7-22 at PageID.1711; ECF No. 7-23 at PageID.1781–82), but the clerk returned the brief to Petitioner because he filed it after the court of appeals had issued its decision. (*Id.* at PageID.1784.) Petitioner is correct that he raised the issue in his motion for relief from judgment. (ECF No. 43-2 at PageID.4126, 4157–62.) However, he was later appointed counsel who filed an amended motion for relief from judgment that omitted the issue. (ECF No. 43-1 at PageID.4075–4121.) While Petitioner did raise the issue in his subsequent applications to the Michigan Court of Appeals and the Michigan Supreme Court, it was never presented to the trial court. Presentation of an issue for the first time on discretionary review to an appellate court does not fulfil the "fair presentation" requirement. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *see Fisher v. Bell*, No. 2:09-cv-246, 2011 WL 8473009, at *5 (W.D. Mich. July 13, 2011), *report and recommendation adopted*, 2012 WL 3065403 (W.D. Mich. July 27, 2012) ("Although this particular issue was in fact presented to the Michigan Supreme Court, a petitioner does not exhaust his state court remedies if the claim is presented for discretionary review, for the first time, to the state's highest appellate court.").

Because a criminal defendant may file only one post-conviction motion for relief from judgment, *see* Mich. Ct. Rule 6.502(G)(1); *Gadomski v. Renico*, 258 F. App'x 781, 783 (6th Cir. 2007), Petitioner has no remaining state-court remedy with which to exhaust this claim. In this

situation, the claim is not dismissed for lack of exhaustion, but a federal court will not consider it unless the petitioner establishes cause for his failure to exhaust and actual prejudice to his trial or appeal. *Gray*, 518 U.S at 162 (1996). While ineffective assistance of appellate counsel that rises to the level of a Sixth Amendment violation can constitute cause to excuse a default, *Murray*, 477 U.S. at 488, the same is not true in state collateral proceedings because a criminal defendant has no right to counsel in proceedings brought after direct review has concluded. *See Coleman*, 501 U.S. at 756–57. Alleged attorney error cannot provide "cause" for a default when the petitioner had no right to counsel at that stage of the state proceedings. *See id.* at 752; *Ritchie v. Eberhart*, 11 F.3d 587, 591–92 (6th Cir. 1993) ("A petitioner cannot claim constitutionally ineffective assistance of counsel . . . where the proceedings in which counsel was ineffective were not proceedings in which there was a constitutional right to counsel."). Thus, Petitioner cannot assert cause based on his counsel's deficient performance in handling the motion for relief from judgment.

A petitioner who cannot show cause may obtain habeas review by showing that the court's consideration is necessary to avoid a miscarriage of justice. *Bradshaw v. Richey*, 546 U.S. 74, 79 (2005) (citing *Coleman*, 501 U.S. at 749–50). Petitioner has not demonstrated that manifest injustice would result because he has not made a colorable claim of innocence; he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray*, 477 U.S. at 495). Actual innocence that would permit review means "factual innocence," not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). This requires a showing "that 'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Coleman v. Mitchell*, 244 F.3d 533, 540 (6th Cir. 2001), *superseded in other part by*

*statute as recognized in Stewart v. Winn*, 967 F.3d 534, 540 (6th Cir. 2020), (quoting *Schlup*, 513 U.S. at 329). Petitioner has offered no new evidence showing that he is factually innocent of his convictions which would render his incarceration a fundamental miscarriage of justice.

Therefore, Petitioner is not entitled to federal habeas review of this claim.

### **Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Recommended Disposition**

For the foregoing reasons, I recommend that the Court deny Petitioner's habeas petition. I further recommend that the Court deny Petitioner's request for an evidentiary hearing because the record and state-court findings are adequate under 28 U.S.C. § 2254(e), and deny Petitioner's request for discovery because he has not demonstrated good cause to conduct discovery. Rule 6, RULES GOVERNING § 2254 CASES. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated: November 3, 2023                  /s/ Sally J. Berens
                                         SALLY J. BERENS
                                         U.S. Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).